UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ADRIANA FREDERICK ET AL.                    CIVIL ACTION

VERSUS                                       NO: 24-1171

GLO RESOURCES LLC, ET AL.                   SECTION "H"

## ORDER AND REASONS

Before the Court are Defendants GLO Resources, LLC and Cooper
Consolidated, LLC's Joint Motion for Summary Judgment (Doc. 32) and GLO
Resources, LLC's Motion for Reconsideration of the Court's Order granting the
Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 45). For
the following reasons, the Motions are **GRANTED**.

## BACKGROUND

Travis C. Frederick was working as a barge manager for Defendant GLO
Resources, LLC ("GLO") on a barge owned by Defendant Cooper Consolidated,
LLC ("Cooper") when he fell nearly 30 feet from the barge into the Mississippi
River and drowned. Plaintiffs Adriana J. Frederick and Travis J. Frederick,
Mr. Frederick's children, bring suit both individually and as administrators of
the estate of Travis C. Frederick against Defendants GLO, Cooper, and Tokio
Marine Specialty Insurance Company ("Tokio Marine"), GLO's insurer.
Plaintiffs allege that Defendants' negligence was the sole and proximate cause
of the decedent's death, including failure to properly train employees, failure

1

to properly supervise employees, and failure to provide proper safety equipment. Plaintiffs allege that this Court has jurisdiction over this matter pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA").[1]

On October 2, 2025, Defendants GLO and Cooper jointly moved for summary judgment, arguing that Travis C. Frederick was GLO's employee and Cooper's borrowed employee, and therefore the LHWCA provides the Plaintiffs' exclusive remedy and precludes claims for negligence. Plaintiffs did not file a response.

Instead, on October 17, 2025, Plaintiffs filed an ex parte Motion for Leave to File a Second Amended Complaint to add a party. Plaintiffs sought to properly identify GLO's insurer as Swiss Re Group, instead of Tokio Marine. In their Motion, Plaintiffs represented that Defendants did not oppose the request, and the Court therefore granted it. Plaintiffs also filed a separate ex parte Motion to Dismiss the claims against the improperly named Tokio Marine, which was likewise granted.

Thereafter, GLO filed a Motion for Reconsideration of the Court's order allowing Plaintiffs to amend their complaint to add Swiss Re Group. GLO indicated that Plaintiffs had not asked for its consent to file the amended complaint and that it opposed the request. Plaintiffs have not responded to GLO's Motion for Reconsideration.

Now before the Court are Defendants' unopposed Motion for Summary Judgment and Motion for Reconsideration. The Court may not simply grant

---

[1] While Plaintiffs also assert diversity jurisdiction as a basis for jurisdiction, they do not properly plead the citizenship of the LLC defendants.

the Motions as unopposed. The Fifth Circuit approaches the automatic grant of dispositive motions with considerable aversion.[2]  Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment.[3]

## LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts

---

[2] *See, e.g.,* Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 806 (5th Cir. 2012); Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.), 757 F.2d 698, 709 (5th Cir. 1985).

[3] *See* Adams v. Travelers Indem. Co. of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006); Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

[4] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[6] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

showing the existence of a genuine issue for trial."[7]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[9] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

## B.  Motion for Reconsideration

A Motion for Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new

---

[7] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[8] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[9] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

evidence or an intervening change in or clarification of the substantive law.'"[12] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders.'"[13]

## LAW AND ANALYSIS

### A. Motion for Summary Judgment

The Court first considers Defendants' Motion for Summary Judgment, which argues that Plaintiffs' claims are precluded by the LHWCA. Defendants allege that the decedent was an employee of GLO and a borrowed employee of Cooper at the time of his death and therefore Plaintiffs' exclusive remedy arises under the LHWCA. They argue that under the LHWCA, Plaintiffs cannot bring a tort claim against Cooper or GLO, and their negligence claims must therefore be dismissed.

Pursuant to the allegations of the Complaint, it is undisputed that the decedent was a payroll employee of GLO who died during the course and scope of his employment as a result of an incident occurring upon the navigable waters of the United States. Accordingly, Plaintiffs' sole remedy against GLO

---

[12] Austin v. Kroger Texas, L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).

[13] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 F. App'x. 829, 831–32 (4th Cir. 2011).

is under the LHWCA, and Plaintiffs are precluded from bringing tort actions against it.[14]

As for Cooper, the Court must consider whether the decedent was a borrowed employee of Cooper such that the LHWCA precludes negligence claims against it. Whether an individual qualifies as a "borrowed employee" is an issue of law determined by nine separate factors first delineated by the Fifth Circuit in *Ruiz v. Shell Oil Co.* The factors are:

> (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation;
>
> (2) whose work is being performed;
>
> (3) was there an agreement, understanding or meeting of the minds between the original and the borrowing employer;
>
> (4) did the employee acquiesce in the new work situation;
>
> (5) did the original employer terminate his relationship with the employee;
>
> (6) who furnished tools and place for performance;
>
> (7) was the new employment over a considerable length of time;
>
> (8) who had the right to discharge the employee;
>
> (9) who had the obligation to pay the employee.[15]

No single factor or set of factors is determinative in establishing a "borrowed employee" relationship, however the central factor is that of control.[16]   The

---

[14] Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab. v. Perini N. River Assocs., 459 U.S. 297, 324 (1983) ("[W]hen a worker is injured on the actual navigable waters in the course of his employment on those waters, he satisfies the status requirement in § 2(3), and is covered under the LHWCA.").

[15] *See* Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir. 1969).

[16] Brown v. Union Oil Co. of Calif., 984 F.2d 674, 676 (5th Cir. 1993).

party asserting the borrowed servant relationship, has the burden of proving the relationship.[17]

Defendants set forth the following unopposed facts. GLO is a recruiting and staffing agency, and Cooper provides stevedoring, barge, marine, and logistics services. GLO and Cooper entered into a General Staffing Agreement ("GSA") pursuant to which GLO was to recruit, hire, and assign employees; handle all payroll and human resources issues; and prepare and procure all employee forms. GLO provided its employees with benefits, workers' compensation coverage, and paid their wages, less the appropriate withholding and taxes. GLO also provided employees with all personal protective equipment such as boots, hard hat, safety glasses and gloves.

GLO assigned the decedent, Travis C. Frederick, to work at Cooper's facility to perform barge maintenance work. Pursuant to the GSA, Cooper assigned work to decedent, supervised his work, and provided him with tools needed for his work at Cooper's work site. Cooper could not terminate the decedent's employment with GLO, but Cooper could ask GLO to reassign or remove him from his work at Cooper. The funds that GLO used to pay the decedent and provide him with PPE and workers' compensation protection ultimately came from Cooper. With these facts in mind, the Court considers the *Ruiz* factors.

---

[17] Franks v. Assoc'd Air Ctr., Inc., 663 F.2d 583, 587 (5th Cir. 1991).

### 1. Control

The unopposed facts indicate that Cooper had control over the decedent and the work that he performed. Accordingly, this factor weighs in favor of a borrowed employee status.

### 2. Work Performed

The unopposed facts indicate that the decedent was performing Cooper's work. Accordingly, this factor weighs in favor of a borrowed employee status.

### 3. Agreement or Understanding

The GSA does not contain any agreement regarding borrowed employee status under the LHWCA of the employees provided by GLO to Cooper. However, the GSA does indicate that Cooper shall be recognized as the statutory employer of employees assigned to it by GLO for purposes of the Louisiana Worker's Compensation Statute.[18] "Both federal and Louisiana law use the same criteria for determining whether an employee is a borrowed employee."[19]

Further, the GSA clearly evinces an understanding between the companies that the employees provided by GLO would take their direction from Cooper.[20] Indeed, GLO acknowledges that it "is in the business of assigning its employees to perform services for clients," and Cooper will "[s]upervise Assigned Employees performing its work."[21] Accordingly, this factor weighs in favor of borrowed employee status.

---

[18] Doc. 32-8.

[19] Capps v. N.L. Baroid-NL Indus., Inc., 784 F.2d 615, 616 (5th Cir. 1986).

[20] *See* Pierce v. BP Am. Prod. Co., 606 F. Supp. 3d 320, 332 (E.D. La. 2022).

[21] Doc. 32-8.

### 4. Employee's Acquiescence

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them."[22] Typically, courts consider the amount of time that the employee had worked in the conditions at issue. Courts have found as little as one month to be sufficient to evidence acquiescence.[23] Here, the decedent was assigned to work for Cooper on October 10, 2023—just six days before his death on October 16, 2023. Accordingly, the amount of time of his employment does not indicate acquiescence. That said, there is nothing in the record to indicate that the decedent requested to be reassigned or complained of his work conditions. This factor is therefore neutral.

### 5. Termination of Relationship

"The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs."[24] Here, there is no evidence that GLO exerted any control over the decedent while he was assigned to work for Cooper. Accordingly, this factor weighs in favor of borrowed employee status.

### 6. Tools and Place

The unopposed facts indicate that, beyond PPE, Cooper provided all the tools necessary for the performance of decedent's job at Cooper's facility. Accordingly, this factor weighs in favor of borrowed employee status.

---

[22] *Brown*, 984 F.2d at 678.
[23] *Id.*
[24] *Capps*, 784 F.2d at 618.

### 7. Length of Employment

The decedent only worked for Cooper for six days before his death. "In the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true. When the employee's injury occurs on the first day, it does not follow that the employee is not a borrowed employee."[25] Accordingly, this factor is neutral.

### 8. Right to Terminate

The focus of this factor is whether Cooper had the right to terminate the decedent's employment with it, "not whether it had the right to terminate his employment in general."[26] It is undisputed that Cooper had the right to request that the decedent be reassigned, and therefore this factor favors borrowed-employee status.

### 9. Obligation to Pay

The focus of the final factor is not who paid the decedent, but "[w]here did the funds originally come from?"[27] The GSA provides that Cooper paid GLO for the work performed by the employees assigned to it based on the amount of time worked. Accordingly, it is undisputed that the funds came from Cooper, and this factor therefore favors a borrowed employee finding.

In conclusion, seven of the factors weigh in favor of a borrowed employee finding and two are neutral. The Fifth Circuit has held that where "no genuine dispute exists as to any of the basic factual ingredients, the district court could

---

[25] *Id.*

[26] Raicevic v. Fieldwood Energy, L.L.C., 979 F.3d 1027, 1033–34 (5th Cir. 2020).

[27] *Id.* at 1034.

determine the borrowed employee question while ruling on the motion for summary judgment."[28] Here, there is no genuine issue of material fact and the factors overwhelmingly support a borrowed employee finding. This Court finds therefore that the decedent was a borrowed employee of Cooper, the LHWCA is Plaintiffs' exclusive remedy, and tort actions are precluded. Summary judgment dismissing Plaintiffs' claims against GLO and Cooper is appropriate.

### B. Motion for Reconsideration

Next, GLO asks this Court to reconsider its order allowing Plaintiffs to amend their Complaint to name Swiss Re Group as a defendant. The deadline for amendment of pleadings in this matter was March 14, 2025. Plaintiffs filed an "unopposed" Motion for Leave to File a Second Amended Complaint on October 17, 2025, seeking to replace Tokio Marine with Swiss Re Group as GLO's insurer. Defendant GLO argues that, despite Plaintiffs' representation otherwise, it did not consent to the amendment. It argues that Plaintiff knew that Swiss Re Group, and not Tokio Marine, was the appropriate insurer-defendant as early as March 13, 2025, when GLO produced a copy of the Swiss Re Group general liability policy in response to Plaintiffs' discovery request for the insurance policy providing coverage for the subject event. In July 2025, Tokio Marine requested to be dismissed from the suit because it does not provide coverage for the event at issue, and GLO and Cooper confirmed their agreement with its dismissal. Despite this, Plaintiffs did not seek to add Swiss Re Group and dismiss Tokio Marine until October 17, 2025—after the March

---

[28] *Capps*, 784 F.2d at 618.

14, 2025 deadline to amend pleadings, after Defendants had moved for summary judgment, and just three months before trial.

Amendment of pleadings is generally assessed under the liberal standard of Federal Rule of Civil Procedure 15(a), which provides that "[t]he court should freely give leave [to amend] when justice so requires." The Fifth Circuit has held, however, that "a party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension."[29] "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."[30] Thus, with respect to an untimely motion to amend, a party must show good cause under Rule 16(b)(4) before the trial court will apply the more liberal standard set forth in Rule 15(a).[31] Four factors are relevant to a showing of good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[32] "'The good cause standard *requires* the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[33]

Plaintiffs have neither responded to Defendant's Motion for Reconsideration nor provided good cause in their Motion for Leave to Amend.

---

[29] E.E.O.C. v. Service Temps Inc., 679 F .3d 323, 333–34 (5th Cir. 2012).

[30] S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003).

[31] Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008).

[32] *S & W Enters., L.L.C.*, 315 F.3d at 536; Banks v. Spence, 114 F.4th 369, 371 (5th Cir. 2024).

[33] *Banks*, 114 F.4th at 371 (quoting *S & W Enters., L.L.C.*, 315 F.3d at 536).

Accordingly, Plaintiffs have not carried their burden to show good cause for seeking to amend their Complaint after the deadline set forth in the scheduling order. Further, the unopposed facts alleged by Defendant GLO indicate that Plaintiffs were aware of the necessity of amendment more than seven months before their motion was filed, suggesting undue delay and dilatory tactics. Accordingly, Defendant's Motion for Reconsideration is granted, and the Court reverses its decision to allow Plaintiffs to amend their Compliant.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants GLO Resources, LLC and Cooper Consolidated, LLC's Motion for Summary Judgment is **GRANTED**. Summary judgment shall issue in Defendants GLO and Cooper's favor, and Plaintiffs' claims against them are **DISMISSED WITH PREJUDICE**.

For the foregoing reasons, Defendant GLO's Motion for Reconsideration is **GRANTED**. Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 38) is **DENIED**, and Plaintiffs' Second Amended Complaint (Doc. 41) is **STRICKEN** from the record.

New Orleans, Louisiana this 20th day of November, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

13
